UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Daniel Williams, 03−A−5915,

                                 Plaintiff,

     v.

Edward J. Meyer et al.,

                                 Defendants.

**Report and Recommendation**

16-CV-857A

---

**I.    INTRODUCTION**

*Pro se* plaintiff Daniel Williams claims that he was assaulted by a fellow inmate when a prison fight broke out on March 16, 2014. Prison officials claim that they frisked plaintiff after the fight and found gang-related materials on him. The prison officials charged plaintiff with fighting, ignoring direct orders to stop fighting, and possession of gang-related contraband. Plaintiff was served with notice of the disciplinary charges, was given a chance to meet with an assistant to prepare his defense, and was given documents related to the charges before his disciplinary hearing began. Plaintiff also had a chance to call witnesses. Once the hearing was under way, however, plaintiff did not call any witnesses, objected to the calling of witnesses by the hearing officer, and objected that the hearing officer was biased against him. The hearing officer eventually ejected plaintiff from the disciplinary hearing, concluding that Plaintiff's objections were excessive and disruptive. Plaintiff lost the disciplinary hearing and was assessed a penalty of nine months in special housing. Following an administrative appeal and an Article 78 proceeding in state court, the charges and the penalty were dropped completely. Plaintiff wound up serving 170 days of the penalty.

Plaintiff now is suing Anthony J. Annucci, Anthony Killinger, Edward J. Meyer, Dean Morris, and Albert Prack for a violation of his Fourteenth Amendment due-process rights, by way

of 42 U.S.C. § 1983. Plaintiff alleges that the misbehavior reports written against him were false. Plaintiff alleges further that defendants essentially predetermined the outcome of the disciplinary hearing by denying him certain documents, denying him a witness whom he wanted to call, and calling witnesses whom he did not want called. Finally, Plaintiff asserts that the administrative appeal should have removed the entire penalty and not just part of it. Following discovery, defendants now have filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 40.) Defendants argue that they gave plaintiff proper notice of the disciplinary charges against him. Defendants argue further that the disciplinary hearing was rescheduled several times to allow plaintiff access to documents and to assistance that he requested. These accommodations, according to defendants, offered plaintiff adequate due process. In the instance of defendant Annucci, defendants make the additional argument that Annucci had no personal involvement in any step of plaintiff's disciplinary proceedings.

District Judge Richard J. Arcara has referred this case to this Court under 28 U.S.C. § 636(b). (Dkt. No. 13.) The Court has deemed the motion submitted on papers under Rule 78(b). For the reasons below, the Court respectfully recommends granting defendants' motion.

**II. BACKGROUND**

This case concerns allegations that defendants did not give plaintiff a chance to prepare a fair defense for a disciplinary hearing following a prison fight. The fight occurred on March 16, 2014 in the recreation yard of A-Block at Wende Correctional Facility ("Wende"). Plaintiff denies that he instigated the fight or otherwise participated in it except to try to defend himself. Otherwise, plaintiff does not challenge the core details as set forth in defendants' statement of undisputed facts. (Dkt. No. 40-2.) According to plaintiff, he was using a telephone in the recreation yard on March 16, 2014 when another inmate attacked him. Defendants Killinger and Morris were among other

2

officers who responded to the fight and broke it up. (*See also* Dkt. No. 40-5 at 5; Dkt. No. 40-7 at 2.) Following the fight, a corrections officer frisked plaintiff. Plaintiff insists that an Officer Stickney frisked him, but defendants confirmed that Morris did so. Morris found papers on him that, in the officer's opinion, looked like gang materials in violation of DOCCS Directive No. 4572. (*See also* Dkt. No. 40-3 at 70.) Plaintiff was transported to Erie County Medical Center ("ECMC") for treatment. When he returned to Wende, plaintiff was placed in the Special Housing Unit ("SHU"). A search of the cells of the six inmates involved in the fight uncovered no contraband. (*See also* Dkt. No. 40-3 at 69; Dkt. No. 40-6 at 40–47.) After about 24 hours in the Wende SHU, plaintiff was transferred to the SHU at Attica Correctional Facility ("Attica").

The events that led to this case began with the issuance of two misbehavior reports against plaintiff. Plaintiff received one misbehavior report charging him with possession of gang-related material in violation of two different prison regulations. (Dkt. No. 40-3 at 71.) Plaintiff received a second misbehavior report charging him with actively participating in the prison fight and with refusing to obey a direct order to stop. (Dkt. No. 40-3 at 72.) Plaintiff was served twice with the misbehavior reports, before and after his prison transfer. (Dkt. No. 40-3 at 34–35.) Plaintiff selected three possible assistants to help him with his upcoming hearing and met with one of them. (Dkt. No. 40-3 at 35, 37, 73–74.) The disciplinary hearing was adjourned several times to allow plaintiff time to acquire documentation including extra copies of the misbehavior reports, three memos, an inmate injury report, a contraband receipt, a cellblock log, copies of photos of plaintiff's injuries, an unusual incident report, and a copy of Directive 4910A. (Dkt. No. 40-3 at 74–76.) The hearing eventually did occur on April 1, 2014. Seven witnesses testified at the hearing: Killinger, Morris, another officer, and four inmates. (Dkt. No. 40-3 at 79.) The hearing officer sustained the charges and assessed a penalty of nine months in the SHU. (Dkt. No. 40-3 at 77.) Plaintiff was

present at the start of the hearing but was ejected. The parties disagree over the details, and the Court is not making any findings as to this point, but plaintiff appears to have attempted to stop the hearing by making repeated objections about witnesses whom he wanted to call and witnesses whom he did not think the hearing officer should be allowed to call. (Dkt. No. 40-3 at 80; Dkt. No. 40-6 at 5–6, 25, 51–84.) Plaintiff received a copy of the disposition. (Dkt. No. 40-3 at 81.) Plaintiff appealed the disposition to defendant Prack, the Director of Special Housing and Inmate Discipline. Prack dismissed the gang-related charges and lowered plaintiff's penalty from nine months to five months. (Dkt. No. 40-6 at 11, 12.) After Prack retired, the Acting Director reversed the outcome of the disciplinary hearing altogether, "pursuant to a recommendation from the NYS Attorney General's Office." (Dkt. No. 40-8 at 34.) The recommendation came in connection with an Article 78 proceeding that plaintiff filed in state court. Plaintiff wound up serving 170 days in the SHU. Prack does not know why his successor reversed the outcome of the disciplinary hearing; he knows only from his general experience that "[r]eversals of Tier Hearing dispositions are the result of hearing officers failing to follow DOCCS regulations and Directives." (Dkt. No. 40-8 at 4.)

Plaintiff commenced this case by filing his original complaint on October 24, 2016. (Dkt. No. 1.) Following screening orders and one amended pleading, plaintiff filed a second amended complaint—the current operative pleading—on May 17, 2017. (Dkt. No. 6.) After additional screening by the Court, one claim survived: a claim against all of the current defendants that they violated his due-process rights by filing false misbehavior reports and by subjecting him to the SHU unnecessarily, thereby infringing on his liberty interests. (*See* Dkt. No. 8.)

Defendants filed the pending motion on April 24, 2019. Defendants argue that they acted in good faith, based on the best knowledge available to them, when they investigated the prison fight and drafted the two misbehavior reports against plaintiff. (Dkt. No. 40-5 at 2.) Defendants argue

4

further that plaintiff did receive due process for his disciplinary hearing. Defendants note that the hearing was adjourned several times, as plaintiff acquired documents, consulted an assistant, and made requests for witnesses. Plaintiff did not sit through the end of the hearing only because of his own conduct. Even so, plaintiff received further due process through an internal administrative appeal, which he won and which reduced his disciplinary penalty; and through his access to the state court system, which led to a recommendation to reverse the hearing outcome altogether. Plaintiff's success, according to defendants, left his 170 days in the SHU as his only tangible injury. Defendant Annucci argues for summary judgment for himself on the additional basis that he had no personal involvement in the disciplinary hearing, the subsequent appeals, or any other aspect of the procedures that stemmed from the prison fight of March 16, 2014. (Dkt. No. 40-4 at 2.) Finally, defendants argue that, even if the outcome of the disciplinary hearing were considered more than just successfully appealed and were considered a false or defective determination, the determination would not rise to the level of a constitutional violation. Neither, in defendants' view, would any violations of internal DOCCS policies rise to the level of constitutional violations.

Plaintiff opposes the pending motion in all respects. In opposition to the motion, plaintiff reiterates many of the factual assertions from his pleadings. Plaintiff asserts that a transfer from Wende to Attica during the pendency of his misbehavior charges hampered his right to pre-hearing employee assistance. Plaintiff insists that defendants "deliberately disregarded" requests for recusal and prison regulations and "reluctantly" granted documents that he requested. (Dkt. No. 41 at 4.) Plaintiff asserts that defendant Meyer, who conducted the disciplinary hearing, exhibited a "whole demeanor and tenor on and off the record of the hearing [that] clearly showed the subtle tactics perpetrated to deny the plaintiff's fundamental due process rights." (Dkt. No. 41 at 5.) Plaintiff

5

further stands by the objections that he made at the hearing with respect to witnesses whom he wanted to testify and witnesses called by defendants whom he did not want to testify.

## III. DISCUSSION

### A. *Summary Judgment Generally*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . . More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . . Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted). "Where, as here, the nonmovant would bear the burden of proof at trial, the movant may show prima facie entitlement to summary judgment by either (1) pointing to evidence that negates its opponent's claims or (2) identifying those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact." *Barlow v. Male Geneva Police Officer who Arrested me on Jan. 2005*, 434 F. App'x 22, 25 (2d Cir. 2011) (summary order) (internal quotation and editorial marks and citation omitted).

Additionally, the Court is mindful that plaintiff is relying largely on his own pleadings and deposition testimony. "While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account. Under these circumstances, the moving party still must meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks and citations omitted).

### B. Due Process at the Disciplinary Hearing

The Fourteenth Amendment, *inter alia*, prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "To state a cognizable procedural due process claim under section 1983, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court determined that, to establish a liberty interest in the context of a prison disciplinary proceeding resulting in removal of an inmate from the general prison population, a plaintiff must demonstrate that (1) the state actually created a protected liberty interest in being free from segregation, and (2) the segregation would impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. The prevailing view in this circuit is that, by its regulatory scheme, the State of New York has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor." *Jones v. Smith*, No. 9:13-CV-1004 GTS/DEP, 2015 WL 1414511, at *12 (N.D.N.Y.

7

Mar. 27, 2015) (internal quotation marks and citations omitted). The screening order of October 2, 2017 already established, at least on a preliminary basis, that plaintiff potentially did undergo an atypical and significant hardship through limitations placed on him in the SHU for 170 days. (Dkt. No. 8 at 2.) The question thus becomes what process plaintiff received and whether some triable question of fact emerges from it. "For example, the inmate must be provided advance written notice of the charges against him and a written statement by the hearing officer setting forth the evidence relied upon and the reasons for the disciplinary action taken. The inmate must also be afforded some opportunity to call witnesses and present documentary evidence. In addition, the hearing tribunal must be sufficiently impartial to guard against a hazard of arbitrary decisionmaking. Finally, the hearing disposition must be supported by at least some evidence." *Hoyt v. Prack*, No. 13-CV-920S, 2016 WL 929336, at *3 (W.D.N.Y. Mar. 11, 2016) (internal quotation marks and citations omitted).

Here, no reasonable jury could conclude that defendants failed to give plaintiff adequate due process. Regardless of what plaintiff's role in the prison fight actually was, no one disputes that a prison fight occurred on March 16, 2014 and that the officers on duty would have observed plaintiff in the middle of it. Defendants accordingly served plaintiff twice with charges stemming from the prison fight. The disciplinary hearing was adjourned more than once to ensure that plaintiff knew the charges against him and received documents necessary to prepare a defense. *Cf. Hoyt*, 2016 WL 929336, at *3 ("Even if Plaintiff was unable to review the documents and present evidence on the first day of the hearing, there is no allegation that he was denied the opportunity to introduce that evidence on a subsequent date. Moreover, even a complete denial of requested documents is sometimes consistent with due process.") (citations omitted). Plaintiff met with an assistant and had a chance to call witnesses. *Cf. Bowens v. Smith*, No. 9:11-CV-784 GLS/ATB, 2015 WL 236270, at *7

8

(N.D.N.Y. Jan. 16, 2015) ("Plaintiff received much more than the minimum requirements. He had a full Tier III hearing, and was afforded the opportunity to present evidence and question the witness."). Plaintiff's success on appeal—while not eliminating his claims, *see, e.g., Quartararo v. Catterson*, 917 F. Supp. 919, 935 (E.D.N.Y. 1996)—means that his due-process allegations have reduced to complaints that he might not have received even more documents than he did, and as quickly as he wanted; that the employee assistance that he received was not better than it was; that the hearing officer did not indulge plaintiff's mistaken identity of the officer who frisked him and did not allow plaintiff to call the wrong officers anyway; that plaintiff was not allowed to block the hearing officer from calling other witnesses (*see* Dkt. No. 40-3 at 50); and that the initial hearing outcome was not favorable. *Cf. Girard v. Cuttle*, No. 915CV0187TJMDJS, 2018 WL 4190140, at *11 (N.D.N.Y. Aug. 10, 2018) ("Plaintiff also objects to his exclusion from his hearing at its conclusion. Given Plaintiff's disruptive conduct Chuttey removed Plaintiff from the hearing room."), *report and recommendation adopted sub nom. Girard v. Chuttey*, No. 915CV187TJMDJS, 2018 WL 4188431 (N.D.N.Y. Aug. 31, 2018); *Rossi v. Stevens*, No. 04-CV-01836 (KMK), 2008 WL 4452383, at *10 (S.D.N.Y. Sept. 30, 2008) ("An inmate has the right to present evidence on the inmate's behalf, provided the calling of witnesses or the disclosure of documentary evidence does not jeopardize or threaten institutional or an individual's security. However, this right does not entail an obligation on the part of prison officials to retrieve every document that an inmate requests even when documents are relevant and obtainable.") (internal quotation and editorial marks and citations omitted). These remaining allegations do not rise to the level of constitutional violations. *See also McAllister v. Call*, No. 9:10-CV-610 FJS/CFH, 2014 WL 5475293, at *11 (N.D.N.Y. Oct. 29, 2014) ("A section 1983 claim is not the 'appropriate forum' in which to seek review of a violation of a prison regulation.") (citation omitted). Additionally, plaintiff has conceded that defendant Annucci had no personal

9

involvement in any step of his challenges to the misbehavior reports. (Dkt. No. 40-2 at 16.) Also, plaintiff never substantiated any conclusory allegations of bias by the hearing officer. *Cf. Hoyt*, 2016 WL 929336, at *4 ("However, the alleged 'promise' that Meyer made to Beall during the hearing may be evidence the Meyer prejudged Plaintiff's guilt, and therefore lacked impartiality in his determination of the disciplinary hearing."); *Johnson v. Fernandez*, No. 09-CV-626 FJS/ATB, 2011 WL 7629513, at *11 (N.D.N.Y. Mar. 1, 2011) ("An inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact."), *report and recommendation adopted*, No. 9:09-CV-626 FJS/ATB, 2012 WL 1033652 (N.D.N.Y. Mar. 27, 2012). Under these circumstances, summary judgment is appropriate.

## IV. CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends granting defendants' motion (Dkt. No. 40).

## V. OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing, and mailed to plaintiff by first-class mail, on the date below. "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Any objections must be filed electronically with the Clerk of the Court through the CM/ECF system.

"As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted); *see also Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's

report and recommendation operates as a waiver of further judicial review of the magistrate's decision.") (citation omitted). "We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object. The rule is enforced under our supervisory powers and is a nonjurisdictional waiver provision whose violation we may excuse in the interest of justice." *United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38–39 (2d Cir. 1997) (internal quotation marks and citations omitted).

"Where a party only raises general objections, a district court need only satisfy itself there is no clear error on the face of the record. Indeed, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review. Such objections would reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 312–13 (S.D.N.Y. 2009) (internal quotation and editorial marks and citations omitted).

SO ORDERED.

__/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: August 28, 2019